UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
FRAMEWORK MI, INC.,

                Plaintiff,

         - against –

CVS HEALTH CORPORATION; CVS
PHARMACY, INC.; CAREMARK RX,
LLC; and PROCARE PHARMACY, LLC
D/B/A ENCOMPASS RX,

              Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

20 Civ. 907 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Framework MI, Inc. ("Framework") brought suit against defendants CVS Health Corporation ("CVS Health"), CVS Pharmacy, Inc. ("CVS Pharmacy"), Caremark RX, LLC ("Caremark"), and ProCare Pharmacy, LLC d/b/a Encompass RX ("ProCare") (collectively, "CVS") asserting claims of breach of contract, breach of the implied covenant of good faith and fair dealing, misappropriation of trade secrets, copyright infringement, and unjust enrichment arising from the alleged improper accessing and copying of Framework's proprietary software products. Before the Court is CVS's motion to dismiss Framework's non-copyright state law claims. For the following reasons, CVS's motion to dismiss is granted.

**BACKGROUND**

**1. Factual Allegations**

Framework is a healthcare consulting and technology company based in Ohio.  First Amended Complaint, ECF No. 31 ("FAC") ¶ 2. The company is the owner of United States Copyright Registration No. TXU 002175958 for Cleo Suite© (the "Copyrighted Work").  Id. ¶ 28.  The Copyrighted Work includes source code for digital interfaces that allow pharmacies to manage "patient information, new patient onboarding, prior authorization, and patient assistance programs." Id. ¶ 33.  Framework licenses its products to pharmacies and can customize software systems for its clients to meet their individualized needs.  Id.

In August of 2015, Framework and Encompass RX, LLC ("Encompass"), a specialty pharmacy based in Georgia (Id. ¶ 21), entered into a contract (the "Framework-Encompass Contract") whereby Framework agreed to provide its services to Encompass, including the licensing of its Copyrighted Work.  Id. ¶ 45.  The Framework-Encompass Contract provides that Encompass "will maintain in strict confidence any and all proprietary information . . . trade secrets . . . products or services . . . software, source code or documentation for software" designated as "Confidential Information" by Framework.  Id. ¶ 46.  "Confidential Information" includes the Copyrighted Work.  Id. ¶ 47.

In May of 2018, while Encompass was still under contract with

Framework, CVS Health, a Delaware company which operates CVS pharmacy locations around the country, purchased Encompass through its subsidiary, ProCare.  Id. ¶ 50.  Around the time of the acquisition, Framework entered into discussions with CVS,[1] which was interested in procuring Framework's services, including use of the Copyrighted Work.  Id. ¶¶ 51-52.  In connection with these discussions, Framework and CVS entered into a Mutual Non-Disclosure Agreement (the "Framework-CVS NDA"),[2] which required, inter alia, that "each party maintain as confidential any information that was shared or disclosed to the other" in the course of the parties' discussions.  Id. ¶ 55.

During these negotiations, Framework continued to provide its services to Encompass.  Id. ¶ 58.  According to the FAC, despite representations and assurances from CVS that the parties were close to reaching a deal on a software services contract, over time, it became apparent to Framework that CVS was dragging out negotiations "in order to buy time so that it could gain access to Framework's confidential and proprietary information."  Id. ¶¶ 57, 59. Framework thereafter ended negotiations and subsequently discovered that in the midst of their discussions, CVS "improperly

---

[1]    The FAC speaks of these negotiations as taking place between Framework and the CVS entities generally, but also specifically refers to discussions including employees of CVS Health and with CVS Pharmacy.

[2]    A copy of the Framework-CVS NDA is provided by CVS, see Declaration of Michael Dixon, ECF No. 45 ("Dixon Decl."), Ex. B, and shows the contract as being between Framework and CVS Pharmacy and its affiliates, including Caremark.

accessed Framework's confidential, proprietary products [and] also improperly copied [the Copyrighted Work], including some of the most unique components of the product including (1) Framework's proprietary code for export from the pharmacy management software to Framework's server; and (2) the code for export/connectivity with onsite FedEx." Id. ¶ 61. CVS allegedly has begun using the software in connection with pharmacies in its network. Id. ¶ 64.

**2. Procedural History**

Framework filed its original complaint against CVS and Encompass on February 3, 2020. ECF No. 1.[3] In response to a letter filed on April 20, 2020 (ECF No. 24) wherein defendants proposed to make a motion for a more definitive statement or, in the alternative, to dismiss the complaint in its entirety, the Court held a teleconference on April 23, 2020, after which Framework agreed to amend its complaint. The FAC was filed on May 27, 2020, and CVS filed an additional letter proposing to make a motion to dismiss, this time as to the non-copyright state law claims. ECF No. 34. The Court held a second teleconference on July 6, 2020, after which we granted CVS leave to file its motion. CVS filed its motion on September 4, 2020, and at the request of counsel, the Court heard oral argument on the motion on May 13, 2021.

---

[3]    Framework later voluntarily dismissed Encompass from the action. See ECF No. 40.

**DISCUSSION**

**1. Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In determining whether a claim has facial plausibility, "we accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

**2. Copyright Preemption**

CVS's principal argument for the dismissal of Framework's state law claims is that these claims are preempted by the Copyright Act. Congress expressly designed a statutory framework of federal copyright preemption in section 301 of the Copyright Act. See 17 U.S.C. § 301. "The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to

-5-

vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004). "The first prong of this test is called the 'subject matter requirement,' and the second prong is called the 'general scope requirement.'" Id. (quoting Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 848 (2d Cir. 1997)).

### a. Subject Matter Requirement

"The subject matter requirement is satisfied if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works. . . . A work need not consist entirely of copyrightable material in order to meet the subject matter requirement, but instead need only fit into one of the copyrightable categories in a broad sense." Id.

Framework's state law claims meet the subject matter requirement. The FAC asserts that "[t]he Copyrighted Work is an original source code containing copyrightable subject matter for which copyright protection exists under the Copyright Act." FAC ¶ 96.[4] Moreover, each of the non-copyright claims has as its basis

---

[4]    See also Universal Instruments Corp. v. Micro Sys. Eng'g, Inc., 924 F.3d 32, 44 (2d Cir. 2019) ("Source code, the human-readable literal elements of software, is copyrightable.").

the improper accessing and copying of the Copyrighted Work.  See
FAC ¶ 65 (asserting as the basis for breach of contract that "CVS's
conduct in improperly accessing and improperly copying Framework's
Copyrighted Work violated the (1) Framework-Encompass Contract;
[and] (2) the Framework-CVS NDA"); id. ¶ 86 (asserting as the basis
for breach of the implied covenant of good faith and fair dealing
that defendants "persuaded Framework into granting [CVS] access to
Framework's products so that [it] could utilize the access . . .
for [its] own benefit"); id. ¶¶ 91-92 (asserting as the basis for
misappropriation of trade secrets that defendant's "servers are
hosting numerous copies of Framework's pharmacy and management
software and code," and that defendants "improperly accessed,
discovered, and copied Framework's trade secrets, including but
not limited to Framework's unique, proprietary code for (1) export
from the pharmacy management software to Framework's server; and
(2) the code for export/connectivity with onsite FedEx"); id. ¶ 109
(asserting as the basis for unjust enrichment that defendants
"improperly derived a benefit from [Framework] by utilizing
[Framework's] unique and proprietary software products for its own
benefit").

     Framework argues that the subject matter of its claims
"consists of materials comprised of both copyrighted materials and
non-copyrightable materials," and therefore preemption may not
apply.  ECF No. 47 at 6.  This argument is directly contrary to

-7-

the Second Circuit's holding in Briarpatch that the works "need
not consist entirely of copyrightable material in order to meet
the subject matter requirement, but instead need only fit into one
of the copyrightable categories in a broad sense."  373 F.3d at
305.  In any event, Framework fails to articulate how any of its
state law claims stand on their own, separate and apart from
reliance on its copyright.

### b. General Scope Requirement

"The general scope requirement [for Copyright Act preemption]
is satisfied only when the state-created right may be abridged by
an act that would, by itself, infringe one of the exclusive rights
provided by federal copyright law.  In other words, the state law
claim must involve acts of reproduction, adaptation, performance,
distribution or display."  Briarpatch, 373 F.3d at 305 (citing
Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d
Cir. 1992)).  "[T]he state law claim must not include any extra
elements that make it qualitatively different from a copyright
infringement claim.  Id. (citing Nat'l Basketball Ass'n, 105 F.3d
at 851).  To determine whether a claim is qualitatively different,
we look at "what [the] plaintiff seeks to protect, the theories in
which the matter is thought to be protected and the rights sought
to be enforced."  Computer Assocs., 982 F.2d at 716 (internal
quotations omitted).  However, courts "take a restrictive view of
what extra elements transform an otherwise equivalent claim into

-8-

one that is qualitatively different from a copyright infringement claim." <u>Briarpatch</u>, 373 F.3d at 306.  While awareness or intent, for example, are not elements that make state law claims qualitatively different, "claims based upon breaches of confidential relationships" satisfy the extra element test and are not preempted.  <u>Computer Assocs.</u>, 982 F.2d at 717.

With these legal principles in mind, we address each state law claim in turn.

### i. Breach of Contract Claim

Framework claims that CVS breached the Framework-Encompass Contract and the Framework-CVS NDA, and that these breaches "raise cognizable legal claims distinct from Framework's copyright infringement claim." ECF No. 47 at 9.  This is so, according to Framework, because the claim involves the unauthorized disclosure of the Copyrighted Work as opposed to CVS's unauthorized use.  The Second Circuit has indeed held that "where the use of copyrighted expression is simultaneously the violation of a duty of confidentiality established by state law, that extra element renders the state right qualitatively distinct from the federal right, thereby foreclosing preemption under section 301." <u>Computer Assocs.</u>, 982 F.2d at 719.  However, it is fundamental that "to state a valid claim for a breach of contract, a plaintiff must state when and how the defendant breached the specific contractual promise." <u>Novio v. New York Acad. of Art</u>, 317 F. Supp.

-9-

3d 803, 813 (S.D.N.Y. 2018).

Here, Framework has failed to allege at any level of specificity any breach of CVS's duty of non-disclosure.  The FAC merely alleges that the Framework-Encompass Contract imposed a duty on Encompass not to disclose the Copyrighted Work and associated proprietary information to third parties.  It then alleges that, after Encompass was acquired by CVS, CVS entered into the Framework-CVS NDA which "required each party to maintain as confidential any information that was shared or disclosed to the other."  FAC ¶ 55.  The FAC is mostly silent on the sequence of events leading to this lawsuit.  It only maintains that after Framework ended negotiations with CVS, it "learned that [CVS] had improperly gained access to numerous confidential aspects and components of Framework's unique proprietary products," and then "improperly copied" the Copyrighted Work.  Id. ¶¶ 60-61.

An examination of this sweeping allegation reveals its lack of substance.  Starting with Encompass, the FAC fails to plead that the company disclosed confidential information to any third party in violation of the Framework-Encompass Contract.  If Framework's theory is that Encompass breached the Framework-Encompass Contract by sharing the Copyrighted Work with CVS – and, notably, this is never expressly stated – it would fail since CVS would have access to the Copyrighted Work after it acquired Encompass.  See id. ¶ 46 (quoting the Framework-Encompass

-10-

Contract's non-disclosure provision which applied to "Recipient" (presumably, Encompass), and its "affiliates").[5]   Moreover, Encompass itself was dismissed from the action by Framework, vitiating whatever claims Framework may have at one time thought it had against it.  See ECF No. 40.  The Framework-CVS NDA appears even less availing to support Framework's theory, as there are no allegations that the Copyrighted Work was disclosed to anyone outside of CVS's affiliates.

Framework's brief in opposition to CVS's motion only confirms the infirmities of the FAC.  Framework merely repeats the existence of the non-disclosure obligations set forth in the two contracts while failing to explain how Defendants breached those obligations.  Indeed, at oral argument on CVS's motion, the Court asked counsel for Framework to name the third party to whom CVS had allegedly disclosed the Copyrighted Work, and counsel could not do so, curiously arguing instead that "[i]f you plead in the complaint that there is a non-disclosure agreement in place and that [the] non-disclosure agreement was violated or breached, you have pled that they shared it with a third party."  Oral Argument Tr. 14-15.  This response of course does not satisfy Iqbal's requirement that plaintiff plead facts beyond "[t]hreadbare

---

[5]     In this regard, at oral argument, counsel confirmed that the CVS-Framework agreement remained in effect after CVS's acquisition of Encompass and that CVS paid an additional sum to have the agreement remain in effect while negotiations between CVS and Framework were ongoing.  Oral Argument Tr. (May 13, 2021) 11:21-25, 12:1-7, 21:21-25, 22:1-4.

recitals of the elements of a cause of action." <u>Iqbal</u>, 556 U.S. at 678.[6]

Because Framework has failed to plead a claim for breach of contract under a theory that CVS disclosed the Copyrighted Work to third parties, all we are left with is Framework's statement that "CVS's conduct in improperly accessing and improperly copying Framework's Copyrighted Work violated the (1) Framework-Encompass Contract; [and] (2) the Framework-CVS NDA." FAC ¶ 65. Even if CVS's alleged conduct of copying the Copyrighted Work did violate these contracts, this is precisely the type of conduct that is qualitatively indistinct from copyright infringement and is preempted by section 301. <u>See</u> <u>Alpha Media Works, Inc. v. Perception Rsch. Servs., Inc.</u>, No. 09 Civ. 9563, 2012 WL 406914, at *2 (S.D.N.Y. Feb. 9, 2012) (holding that breach of contract claim was preempted where plaintiff "allege[d] that Defendant breached the Non-Disclosure Agreement and [Licensing] Agreement when it 'adapt[ed], alter[ed], modif[ied], translate[d], or create[d] derivative works of [plaintiff's] software.'").

Framework has therefore failed to state a viable claim for breach of contract, which would in any event have been preempted by the Copyright Act.

---

[6]     At oral argument, Framework's counsel cited "concerns" that CVS had disclosed information to Framework's competitor, Asembia, but when asked by the Court if Framework had any actual basis for these concerns, counsel conceded that Framework could not make "specific allegations as to Asembia." Oral Argument Tr. 12:12-14:14.

### ii. Breach of the Implied Covenant of Good Faith and Fair Dealing

For similar reasons, Framework's claim for breach of the implied covenant of good faith and fair dealing must also be dismissed.  The covenant, which is implicit in every contract, includes a promise that "neither party to a contract shall do anything that has the effect of destroying or injuring the right of the other party to receive the fruits of the contract, or to violate the party's presumed intentions or reasonable expectations."  Spinelli v. Nat'l Football League, 903 F.3d 185, 205 (2d Cir. 2018) (internal quotations omitted).

Framework's theory appears to be that in prolonging negotiations with Framework and representing that the two sides were close to agreeing to a deal, CVS "lull[ed] Framework into a false sense of security entirely for the bad faith purpose of gaining unfettered access . . . to Framework's products so they could unfairly derive a benefit from Framework and its products." FAC ¶ 85.[7]  However, the unfair benefit alleged here is that CVS

---

[7]     Framework attempts to reframe its theory in its brief in opposition to allege that CVS engaged in negotiations "to obtain information that it would not otherwise be permitted access and subsequently disclosed and shared that information throughout its organization in a manner that constituted bad faith." ECF No. 47 at 11.  As discussed above, however, Framework has failed to support its theory that CVS improperly disclosed the Copyrighted Work.  Regardless, were it able to support its breach of contract claim under its disclosure theory, its breach of the implied covenant of good faith and fair dealing would be dismissed for redundancy.  See Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013) ("[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant.").

was able to reproduce the Copyrighted Work for its own purposes – the same harm covered by a claim of copyright infringement.  The fact that CVS may have acted in bad faith during negotiations does not change the fact that Framework's claim is qualitatively indistinct from copyright infringement.  See Shepard v. Eur. Pressphoto Agency, 291 F. Supp. 3d 465, 471 (S.D.N.Y. 2017) ("Awareness or intent . . . are not extra elements that make a state law claim qualitatively different.").

Framework's claim for breach of the implied covenant of good faith and fair dealing must therefore be dismissed.

### iii. Misappropriation of Trade Secrets

Framework's misappropriation of trade secrets claim suffers the same fate.  The FAC claims that CVS "improperly accessed, discovered, and copied Framework's trade secrets, including but not limited to Framework's unique, proprietary code for (1) export from the pharmacy management software to Framework's server; and (2) the code for export/connectivity with onsite FedEx."  FAC ¶ 92. The claim then is indistinguishable from Framework's allegations that CVS infringed the Copyrighted Work.  Framework again attempts to argue that its misappropriation claim may survive because it is based on CVS's breach of confidentiality, but as discussed above, Framework fails to adequately allege such a breach.  See Tysellcrouse, Inc. v. Sway Mgmt., LLC, No. 15 Civ. 3832, 2016 WL 5923423, at *5 (N.D. Cal. Oct. 11, 2016) (holding misappropriation

-14-

of trade secret claim preempted because "there are no allegations that [defendant] disclosed any such 'secret' to any third party[; r]ather, the gravamen of the claim is that [defendant] copied and used the software for its own purposes — which is the very essence of the copyright claim"); Computer Generated Sols. Inc. v. Koral, No. 97 Civ. 6298, 1998 WL 1085945, at *6 (S.D.N.Y. Dec. 9, 1998) ("Plaintiff's misappropriation of trade secrets claim fares no better because it is based solely on the misappropriation of what plaintiff claims is protected expression.").

Additionally, CVS contends – and the Court concurs – that the FAC fails to allege with any specificity what trade secrets CVS purportedly misappropriated, only raising vague generalities of "procedures, processes, systems, methods of operation, concepts, principles, and discoveries" contained in the Copyrighted Work. See Elsevier Inc. v. Doctor Evidence, LLC, No. 17 Civ. 5540, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (emphases, citations and internal quotations omitted) ("Alleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue, does not give rise to a plausible allegation of a trade secret's existence."). In fact, when Framework does attempt to define misappropriated trade secrets, it merely points to literal aspects of the Copyrighted Work. See FAC ¶ 90.

At oral argument, the Court gave Framework an opportunity to

-15-

describe the supposedly non-copyrightable secrets that CVS had allegedly misappropriated, but Framework again merely pointed to literal aspects of its code – in particular, how the code "interacts" with FedEx to provide Framework with heightened oversight over FedEx shipments.  Oral Argument Tr. 6-9.   Further, even if the Copyrighted Work contained non-copyrightable elements such as ideas and processes, this alone would not save Framework's claim from dismissal.  The Second Circuit in <u>Computer Assocs.</u> – a case on which Framework heavily relies – found that "[t]he district court correctly stated that a state law claim based solely upon [defendant]'s 'use', by copying, of [the copyrighted work]'s non-literal elements could not satisfy the governing 'extra element' test, and would be preempted by section 301."  982 F.2d at 719.

Framework's misappropriation of trade secrets claim is therefore preempted.[8]

### iv.  Unjust Enrichment

Lastly, Framework's unjust enrichment claim is preempted. The FAC claims that CVS "improperly derived a benefit from [Framework] by utilizing [Framework]'s unique and proprietary software products for its own benefit without [Framework]'s consent and/or without compensating Framework for such use."  FAC

---

[8]      We need not address CVS's alternative argument that the misappropriation claim fails because such a claim is not cognizable under the state law governing the parties' dispute.

¶ 109.  Once again, the claim is indistinguishable from Framework's claim of copyright infringement, and courts routinely hold that the additional element of unjust enrichment, while "not required for copyright infringement," does not go "far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim."  Briarpatch, 373 F.3d at 306.  Framework's argument that the claim is not preempted because it involves CVS's enrichment related to information and materials that are expressly exempted from copyright protection is unavailing for the reasons stated above.[9]

## CONCLUSION

For the foregoing reasons, CVS's motion to dismiss the state law claims is GRANTED.  The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 43.

**SO ORDERED.**

Dated:    New York, New York
          June 11, 2021

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[9]    Finally, the Court rejects Framework's contention that we should deny CVS's motion to dismiss as "premature" and allow discovery on the state law claims to proceed.  "Motions to dismiss are routinely filed before the plaintiff has access to discovery.  However, it is still incumbent on Plaintiff to allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Wellton Int'l Express v. Bank of China (Hong Kong), No. 19 Civ. 6834, 2020 WL 1659889, at *4 n. 4 (S.D.N.Y. Apr. 3, 2020) (internal quotations omitted).  Framework fails to identify how additional discovery could cure the deficiencies in the FAC, which, after all, primarily arise from its inability to explain how CVS breached its obligations under agreements with Framework, separate and apart from CVS's infringement of Framework's copyright.